

# KINDLON
# SHANKS & ASSOCIATES
ATTORNEYS AND COUNSELORS AT LAW
74 CHAPEL STREET, ALBANY NEW YORK 12207
(518) 434-1493  Fax (518) 432-7806
www.Kindlon.com

TERENCE L. KINDLON
LAURIE SHANKS*

KATHY MANLEY
LEE C. KINDLON**
GENNARO CALABRESE
GLEN HAMMOND***

*ADMITTED IN NEW YORK
ARIZONA AND INDIANA

**ADMITTED IN NEW YORK
AND THE DISTRICT OF COLUMBIA

***ADMITTED IN NEW YORK
AND ARIZONA

February 12, 2014

Hon. Christian F. Hummel
United States District Court
Northern District of New York
James T. Foley Courthouse
445 Broadway
Albany, New York 12207

**United States of America v. Abdelmaji K. Lababneh; 1:14-mj-18 (CFH)**

Dear Judge Hummel:

Abdelmaji K. Lababneh is charged by criminal complaint with violating 21 USC 846, 841(a)(1) and (b)(1)(c), Conspiracy to Distribute a Controlled Substance, XLR-11.

On January 22, 2014, a detention hearing was conducted. Mr. Lababneh was represented by the Federal Public Defender. Although pretrial services recommended release on conditions, secured by a $25,000 recognizance bond, you ordered detention.

On February 3, 2014, I substituted as defense counsel. My review of the facts and the law has revealed new information that strongly suggests Mr. Lababneh is not guilty of any criminal conduct.

XLR-11 was not designated a controlled substance until May 16, 2013, at which time it was administratively added to Schedule I (see DEA press release, Exhibit A). My client, charged with violating the statute on May 23, 2013, was not in the United States at that time. He had departed the country to travel to Syria in April, 2013 and did not return from abroad until June, 2013. I will provide travel documents and my client's stamped passport to confirm this.

Hon. Christian F. Hummel
February 12, 2014
Page 2

Given that my client left the country at a time when it was not unlawful to distribute XLR-11, was not in the country on May 16, 2013 (the date XLR-11 was added to Schedule I), or May 23, 2013 (the date of his alleged offense) and did not return until June, 2013, well after commission of the alleged offense, it is logically impossible for him to bear any criminal responsibility

Additionally, even if the court is not prepared—at this time—to conclude that Mr. Lababneh has engaged in no criminal conduct, there remain several other sound statutory reasons to support his release on conditions, and given that the new information presented herein suggests there is a serious flaw in the prosecution's case, these should be given the most serious consideration.

A violation of the statute in question carries no mandatory minimum. Additionally, I am prepared to provide the court with factual information conclusively demonstrating that my client, a United States citizen with a limited criminal history, is not a danger to the community and that there is no risk of flight. He is the devoted father of three children and is married to a pregnant wife.

In light of the above I request the court reopen the detention hearing to reconsider the question of my client's pretrial release as soon as possible. Thank you.

Respectfully,

KINDLON SHANKS & ASSOCIATES

By: *[signature]*
Terence L. Kindlon
tkindlon@kindlon.com

TLK/tm
enc.

cc: Jeffrey Coffman, Assistant United States Attorney (*via ECF*)
    Abdelmaji K. Lababneh

**HEADQUARTERS NEWS**

May 16, 2013
Contact: DEA Public Affairs
(202) 307-7977

### DEA Makes Three More "Fake Pot" Drugs Temporarily Illegal Today

**MAY 16 (WASHINGTON)** – Today the United States Drug Enforcement Administration (DEA) made the synthetic cannabinoids UR-144, XLR11, and AKB48 Schedule I, illegal drugs under the Controlled Substances Act (CSA) for the next two years. These cannabinoids are often seen in so-called "fake pot" products that are falsely marketed and sold as "herbal incense" or "potpourri" products on the Internet and by a variety of retail stores.

Synthetic cannabinoids refer to a family of substances that act on the brain similar to *delta-9* THC, the main psychoactive constituent of cannabis. The actual chemical names of today's controlled cannabinoids are:

- (1-pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone (UR-144);
- [1-(5-fluoro-pentyl)-1H- indol-3-yl](2,2,3,3-tetramethylcyclopropyl)methanone (5-fluoro-UR-144, XLR11); and
- N-(1-adamantyl)-1-pentyl-1H-indazole-3-carboxamide (APINACA, AKB48).

This action is based on a finding by DEA's Deputy Administrator Thomas Harrigan that the placement of these synthetic cannabinoids into Schedule I of the CSA is necessary to avoid an imminent hazard to the public safety. The DEA published a notice of its intent to do this and issued a press release about it on April 12, giving makers, sellers, and other possessors of these drugs a month to rid themselves of their current stocks and to cease making or buying more.

Over the past three years, smokable herbal blends containing synthetic cannabinoids have been marketed under the guise of being "legal" and have become increasingly popular, particularly among teens and young adults. These products consist of plant material that has been laced with these cannabinoids. These substances have not been approved by the FDA for human consumption or for medical use. The long-term physical and psychological effects of these substances and their associated products are unknown but are potentially severe, and psychotic and violent behavior has been observed in short-term users of these products.

During the next two years, DEA will work with the U.S. Department of Health and Human Services (DHHS) to determine if these chemicals should be made permanently illegal.

Click here for a copy of the Final Order and here for an explanation of the process under the CSA for temporarily and permanently scheduling drugs and chemicals.